# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

IAN DAWES,

                                        Plaintiff,

v.

                                                            DECISION AND ORDER
WALTER KELLY, *et al.*,                                      01-CV-6276-CJS

                                        Defendants.

## APPEARANCES

For plaintiff:                              Ian Dawes 88-B-0326
                                            Wende Correctional Facility
                                            P.O. Box 1187
                                            Alden, NY 14004-1187

For defendants:                             Darren Longo, A.A.G.
                                            New York State Attorney General's Office
                                            107 Delaware Avenue 4th Floor
                                            Buffalo, NY 14202

## INTRODUCTION

Plaintiff filed this civil rights action on June 1, 2001, pursuant to 42 U.S.C. §§ 1983 and 1988. The complaint consists of a narrative of events with two causes of action alleging violations of his First, Fourteenth, and Eighth Amendment rights. Now before the Court is defendants' motion for summary judgment, filed on May 13, 2005, seeking judgment on the official capacity claims against all defendants, and any and all claims against Superintendent Walter Kelly ("Kelly"), hearing officer T. Schoellkopf ("Schoellkopf"), and Sergeant L. Buehler ("Buehler"). For the reasons stated below, the Court grants the application.

## BACKGROUND

In the first of plaintiff's two causes of action, he alleges that defendants, by conspiring together, "denied plaintiff his to [sic] medical confidentiality, and to be free from retaliatory discipline in violation of his First and Fourteenth Amendment [sic]." In the second, he alleges that defendants "denied plaintiff his right to be free from cruel and unusual punishment in violation of his [sic] Eighth Amendment." (Compl. at 9.)

Previously, the Court granted, in part, defendants' motion to dismiss certain claims. The Court, reading the complaint liberally and interpreting plaintiff's claims "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), dismissed all claims based on his allegation that in May 1998, Correction Officer John J. Bennis ("Bennis") filed a false misbehavior report against him. (*See* Compl. ¶ 9.) The Court also dismissed his claim that the punishment he received as a result of Bennis's misbehavior report violated his Due Process rights, and further dismissed any claims arising from the allegations that Bennis and Buehler each threatened him on June 1, 1998. (Compl. ¶¶ 13, 14.) Additionally, the Court dismissed plaintiff's claim that Bennis fabricated a misbehavior report against him on June 1, 1998. Next, the Court dismissed any constitutional claim based on allegations of a video taping policy described in his complaint. Finally, the Court dismissed and any claims arising from the allegation that J. Konfederath ("Konfederath") fabricated a misbehavior report on December 20, 1998 and that plaintiff was convicted and sentenced to 28 days of restricted diet as a result of that report. (Complaint ¶¶ 39–41.) Memorandum and Order, *Dawes v. Kelly*, No. 01-CV-6276-CJS, 2004 WL 2284885 (W.D.N.Y. Oct. 7, 2004).

In connection with defendants' motion for summary judgment, the Court issued a motion scheduling order dated May 31, 2005, directing plaintiff to file any responsive papers to defendants' motion by July 22, 2005. Additionally, on May 16, 2005, the Clerk mailed plaintiff an *Irby* notice, *see Irby v. New York City Transit Authority*, 262 F.3d 412 (2d Cir. 2001), containing the following warnings:

### RULE 56 MOTIONS FOR SUMMARY JUDGMENT <u>IRBY</u> NOTICE
(See <u>Irbv v. New York Citv Transit Authority</u>, 262 F.3d 412 (2d Cir. 2001))

A party in your lawsuit has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which means that summary judgment will be granted if the Court finds that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## Failure to Respond to A Motion For Summary Judgment May Result in The Grant of Judgment in Favor of The Party Seeking Summary Judgment and The Dismissal of All or Part of The Case.

### <u>Opposing Affidavits and Exhibits</u>

Therefore, if the motion seeks summary judgment against you, you **MUST** submit opposing papers in the form of one or more affidavits (or affirmations) made upon the personal knowledge of the person signing each affidavit. Each affidavit must set forth admissible facts and must show that the person submitting that affidavit is competent to testify as to the matters stated therein (because he or she has personal knowledge of the facts set forth in the affidavit). If you wish to submit exhibits in opposition to the motion, you may attach to the affidavit (or submit separately) sworn or certified copies or all papers or parts thereof which are referred to in an affidavit.

### <u>Statement of Material Facts Requiring a Trial</u>

If the motion seeks summary judgment against you, you **MUST** also submit a <u>separate</u>, short, and concise statement of the material facts as to which you contend there exists a genuine issue which must be tried. See Rule 56 of the Local Rules of Civil Procedure (available on the Western District web site at www.nywd.uscourts.gov). **Note** that all of the material facts which

have been set forth in the statement served on you by the moving party (which that party claims are material facts about which there is no genuine issue to be tried) <u>will be deemed to have been admitted by you unless you controvert the facts in your statement of material facts presenting a genuine issue presenting a genuine issue requiring a trial.</u>

<u>Memorandum of Law</u>

If the motion seeks summary judgment against you, you **MUST** also submit a <u>separate</u> answering memorandum of law, Local Rule 7.1 (e), which may not exceed 25 pages in length without prior approval of the Court, Local Rule 7.1(f). Failure to comply may result in the motion being decided against the noncomplying party.

**NOTE**: If you are the party bringing the summary judgment motion, you may file reply papers ONLY if you state on the notice of motion that you wish to do so and/or if the court order scheduling the motion gives you the opportunity for doing so. See Local Rules of Civil Procedure Rule 7.1 (c).

(*Irby* Notice (# 53) (emphasis in original).) Consequently, plaintiff's failure to contest the

factual statement filed by defendants as part of their moving papers, results in the Court's

adoption of the following facts:

> 1. The Time Allowance Committee ("TAC") has not reviewed the time allowance for the plaintiff in this matter, Ian Dawes 88-B-0326. (Stachowski Decl. ¶5.)
>
> 2. The TAC therefore has not yet taken away any of plaintiff's Dawes' good time credits. (Stachowski Decl. ¶6.)
>
> 3. Plaintiff has not actually lost any good time, because the TAC has not met. (Stachowski Decl. ¶20.)
>
> 4. A hearing officer cannot actually take away an inmate's good time; he or she can only recommend it. (Stachowski Decl. ¶13.)
>
> 5. When an inmate receives a disciplinary determination in which the hearing officer recommends a loss of good time, the inmate does not actually lose the good time until the TAC meets and decides to follow the hearing officer's recommendation. (Stachowski Decl. ¶14.)
>
> 6. The TAC can reduce the inmate's good time by the full amount recommended by the hearing officer, by part of the amount recommended

by the hearing officer, or it can decline to reduce the inmate's good time at all. (Stachowski Decl. ¶16.)

7. The TAC will not consider reductions which were recommended in a determination which has been expunged: only those recommendations which are still in Dawes' disciplinary record will play a role in the TAC's decision. (Stachowski Decl. ¶17.)

8. Plaintiff received a penalty of 270 days in the Special Housing Unit ("SHU") for an incident which took place on June 16, 1995. (Stachowski Decl. ¶21; Ex. A, at 006.)

9. That penalty was served from October 16, 1997 to July 13, 1998. (Stachowski Decl. ¶22, Ex. A, at 006.)

10. Dawes also received a penalty of 180 days in SHU for an incident which took place on August 30, 1995. (Stachowski Decl., ¶23; Ex. A, at 006.)

11. That penalty was served from July 13, 1998 to January 9, 1999. (Stachowski Decl., ¶24; Ex. A, at 006.)

(Defendants' Statement of Undisputed Facts (# 48).)

## SUMMARY JUDGMENT STANDARD

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact.

*See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts.

*Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*,

804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R.

CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue

of fact by submitting an affidavit in opposition to a summary judgment motion that, by

omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New*

*York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## DISCUSSION

### *Official Capacity Claims*

Defendants first contend that all claims in both causes of action against defendants

in their official capacities should be dismissed. The Court agrees. Plaintiff has brought suit

against the defendants in their individual and official capacities. The Eleventh Amendment

to the United States Constitution bars federal suits against state officials on the basis of

state law. *Allen v. Cuomo,* 100 F.3d 253, 260 (2d Cir. 1996). Thus, to the extent that

plaintiff's claims are based upon state law, they must be dismissed. Further, any federal

claims against the defendants in their official capacities are likewise barred by the Eleventh

Amendment and are, therefore dismissed. *See Hafer v. Melo*, 502 U.S. 21, 29-31 (1991);

*Mathie v. Fries*, 121 F.3d 808, 817-818 (2d Cir. 1997).

Next, defendants seek a judgment dismissing the lawsuit against defendants Kelly,

Schoellkopf, and Buehler.[1] The Court will address each of those defendants separately.

---

[1]The narrative portion of plaintiff's complaint makes factual allegations against individuals, but does not indicate the legal theory applicable to the factual situation, except to say in two, broadly written causes of action, that defendants violated his constitutional rights. The claims against Kelly, Schoellkopf and Buehler, are primarily under the First cause of action, alleging Due Process and First Amendment violations; however, (continued...)

Kelly. The complaint makes only one factual allegation against defendant Kelly, namely that he and defendant Conway "promulgated a video tape recording policy prohibiting the video cameras in the disciplinary hearing rooms from recording the activities taken [sic] place therein." (Compl. ¶ 30.) The Court previously dismissed "any constitutional claim based on allegations of a videotaping policy" in its memorandum and order entered on October 7, 2004. Since the complaint makes no other allegations against defendant Kelly, the Court determines that he is entitled to summary judgment.

Schoellkopf. The complaint makes only one factual allegation against defendant Schoellkopf, namely that he held a disciplinary hearing in June 1998 based on a misbehavior report written by defendant Bennis. (Compl. ¶11.) Plaintiff claims that Schoellkopf found him guilty of the charge after denying him his due process right to call witnesses (*id.*) and then imposed 28 days of restricted diet as a punishment (*id*. ¶12). The Court determined in its October 7, 2004, order that plaintiff's allegations regarding this hearing were "insufficient to state a cognizable due process claim," because 28 days on the restricted diet did not implicate a liberty interest. *Dawes*, 2004 WL 2284885, *3. The complaint makes no other allegations against defendant Schoellkopf. Accordingly, he is entitled to summary judgment.

Buehler. The complaint only makes one factual allegation against defendant Buehler, namely that he and defendant Bennis threatened plaintiff. (Compl. ¶¶ 13-14.) The Court dismissed "any causes of action for the threats." *Dawes*, 2004 WL 2284885, *3.

---

[1](...continued)
to the extent that the alleged threats by Buehler could be construed to be violative of plaintiff's Eighth Amendment rights, then the Second cause of action would also be implicated.

Because the complaint makes no other allegations against defendant Buehler, he is also entitled to summary judgment.

***Conspiracy–Due Process Claim Against Conway and Roach***

Defendants contend that the conspiracy–Due Process claim against defendants Conway and Roach should be dismissed. They argue that plaintiff alleges that on June 1, 1998, defendants Bennis, Mackiewicz, Wagner, and Johnson assaulted him while defendant Konfederath watched. (Compl. ¶¶ 15-18.) Plaintiff also claims that in order to cover up the assault, Bennis wrote a false misbehavior report against him. (Compl. ¶ 23.) Defendant Roach conducted the disciplinary hearing on this misbehavior report. (Compl. ¶24.) Plaintiff alleges that defendants Conway and Roach met and reached "an agreement and tacit understanding that [plaintiff] would be systematicly [sic] found guilty of this assault charge." (Compl. ¶24.) In its October 7, 2004 ruling, the Court dismissed the claim that Bennis fabricated the June 1, 1998 misbehavior report. *Dawes*, 2004 WL 2284885, *4. Regarding that earlier application, defendants also moved to dismiss the Due Process claim against defendant Roach based on his conduct of the hearing, arguing that plaintiff had failed to establish the liberty interest required for such a claim. In its October 7, 2004 decision, the Court allowed plaintiff to go forward with his conspiracy claim against Conway and Roach. However, addressing this claim further, the Court now determines that both Conway and Roach are entitled to judgment on the conspiracy claim.

In order to prevail on a conspiracy claim, a plaintiff must prove: "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or

property or deprived of any right of a citizen of the United States," and 5) that the conspiracy is "motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Mian v. Donaldson*, 7 F.3d 1085 (2d Cir. 1993) (*quoting United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)). The Court determines that plaintiff will be unable to establish three of these elements.

<u>Actual Existence of Conspiracy</u>

As to this element, plaintiff must submit evidentiary proof in admissible form establishing an agreement between Conway and Roach. *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992); *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988). Conclusory, vague or general allegations of conspiracy, such as plaintiffs', cannot withstand a summary judgment motion. *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *see also Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993). When deposed and asked about the conspiracy between Conway and Roach, plaintiff testified as follows:

> Q: How do you know that they had a meeting; did they do that in front of you?
>
> A: Sure they did. I don't know if you've been to SHU. There's an open area, like a day room area. And the hearing room is at the corner of the day room. During the hearing, each time I came out of the hearing, that Conway was present in SHU, standing outside of the hearing room in the area with his arms folded, at attention, watching everything. He would leave the hearing room and go out there and communicate with Conway and tell him what he was going to do.
>
> Q: Roach would?
>
> A: Yes.
>
> Q: You could hear what they were saying?

A:    No. But they would go right from the hearing room and go straight to Deputy Conway and go back and tell me what he was going to do, and what was going to be done.

Q:    So you're making an assumption about what they were actually saying, based on what happened?

A:    I know they were discussing me and my hearing.

Q:    How do you know that?

A:    Because he came up there specifically for that purpose. There was no other time he was up there, other than when the hearing was going on. Generally he comes up, makes rounds and leaves. He comes up there and stands there until the entire hearing is completed. He'll leave several times.

Q:    Roach did?

A:    To Deputy Conway and spoke with him.

(Longo Decl., Ex. A: at 57-58.)

Plaintiff bases his conspiracy claim on Conway's contact with Roach during his hearing, coupled with his speculation about what the two discussed. When pressed on whether he heard what Conway and Roach were actually saying to one another, he confirmed that he did not hear their conversation:

Q:    But you didn't hear what they said?

A:    No. But to give you an example of what I mean, initially during the hearing he had found me guilty of threats, sexual – trying to elicit sexual acts from staff, a couple of charges he found me guilty of. He found me guilty of these charges, before all the evidence was even completed.

Q:    How so? How did he do that? Are you saying he wrote on the form guilty?

A:    Wrote on the disposition.

> Q:      So during the hearing he was writing down stuff on the hearing form?
>
> A:      When he came back on the last day of the hearing, the evidence against me, the disposition form was already filled out as to what Conway wanted. When they fill out a guilty verdict next to the charge they will put a G for guilty, or NG for not guilty. What he was doing was he put either a line for – one line for guilty, or zero for not guilty. And my charges were already filled out, guilty, guilty, guilty, guilty.

(Longo Decl., Ex. A, at 58-59.) Plaintiff went on to testify that Roach actually changed some of findings to not guilty:

> A:      And a few things that I brought out was inconsistent with the evidence; that I had staff witness contracting – that never took place [sic]. He immediately adjourned the hearing, went out of the room to Deputy Conway and explained this to Deputy Conway and –
>
> Q:      You heard him?
>
> A:      No. But when he came back in *he changed those guilty verdicts to not guilty*.
>
> Q:      But what you were telling me before was that Conway was arranging for you to be found guilty.
>
> A:      Yes.
>
> Q:      But now Roach comes in after talking to Conway and changes guilty to not guilty? A: Because he explained to Conway what the evidence showed, that it wasn't possible to find me guilty. So he went to explain that to Deputy Conway.

(Longo Decl., Ex. A, at 60-61 (emphasis added).) Thus, plaintiff seeks to establish a meeting of the minds based on Conway's interaction with Roach, but is unable to testify as to what Conway and Roach actually talked about. The fact that they could have been talking about plaintiff's hearing and deciding how to deny him of due process is insufficient to establish a conspiracy. *See Romer v. Morgenthau*, 119 F. Supp. 2d 346, 364 (S.D.N.Y.

Page 12 of 18

2000). Moreover, plaintiff's allegation that after talking to Conway, Roach came back to the hearing room and changed some findings from guilty to not guilty, does not support an inference of conspiracy to deprive plaintiff of his due process rights.

<u>Actual Deprivation of a Constitutional Right</u>

In order to prevail on his conspiracy claim, plaintiff must show that the conspiracy resulted in an actual deprivation of his constitutional rights. *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). In that regard, plaintiff alleges that Roach and Conway conspired to deprive him of his due process rights at the hearing.

Procedural due process claims have two elements. First, there must exist a liberty or property interest which has been interfered with by the state. Second, the plaintiff must show that the procedures which led to the deprivation were constitutionally deficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). The Court concludes that here, plaintiff cannot establish the first requisite, that is, that defendants interfered with his liberty interest.

The Constitution does not require that prison officials comply with due process protections in imposing restrictive confinement on an inmate, unless the confinement subjected the inmate to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff alleges that, at the end of the hearing, Roach found him guilty and sentenced him to 2 years in SHU, 2 years loss of good time, and 28 days of the restricted diet. (Compl. ¶28.) However, that is not the penalty plaintiff actually served.

With respect to the recommended loss of good time, the Time Allowance Committee ("TAC") has not met concerning plaintiff's case. He, therefore, has not lost the good time Roach recommended. (Stachowski Decl. ¶¶ 5, 6, 17, 20.)[2] With respect to the SHU time, plaintiff alleges that Roach's determination, which was dated June 17, 1998, was reversed on August 19, 1998. (Compl. ¶ 28.) Thus, the most SHU time plaintiff could have served was 64 days; however, during the time between June 17, 1998 and August 19, 1998, plaintiff was still serving SHU time that had been imposed in 1995. (Stachowski Decl. ¶¶ 21-24, Ex. A, at 006.) Consequently, the only possible deprivation plaintiff can prove is 28 days of restricted diet, and the Court has already ruled that 28 days on the diet is "insufficient to state a cognizable due process claim." *Dawes*, 2004 WL 2284885, *3. Without a cognizable due process claim, the conspiracy claim against Conway and Roach cannot survive summary judgment.

Discriminatory Animus

An actionable conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *United Brotherhood of Carpenters, Local 610*, 463 U.S. at 829; *Mian*, 7 F.3d at 1087. Here, plaintiff has made no allegations from which such an invidious animus may be inferred.

---

[2]Stachowski states in her declaration that the TAC will not meet to consider the recommended loss of good time until shortly before his earliest release date in February 2010. It is unclear from her declaration whether the TAC could adopt the recommendation at that time and move the release date from February 2010 to February 2012. Nevertheless, there is no actual loss of good time now, and there may never be any loss of good time, thus, the issue is not ripe. *See Wilson v. Cain*, No. 01-30438 Summary Calendar, 2001 WL 822805, *1 (5th Cir. Jun. 29, 2001) ("Until such time as the loss of those good-time credits affects the length of his incarceration, Wilson's claim that the loss of those credits infringed his liberty interest is not ripe.") (footnote omitted).

Since the Court finds that plaintiff failed to come forward with evidentiary proof in admissible form as to three requisite elements, accordingly, the conspiracy–Due Process claim against Conway and Roach is dismissed. Moreover, as neither defendant is named in any other claim, both Conway and Roach are dismissed from this lawsuit.

**Conspiracy–Due Process Claim Against Higley and Konfederath**

Defendants also contend that the conspiracy–Due Process claim against Higley and Konfederath should be dismissed. In its prior ruling on October 7, 2004, the Court allowed plaintiff to proceed on his claim that defendants Higley and Konfederath conspired to violate his civil rights. However, now at the summary judgment stage, plaintiff has failed to submit evidentiary proof in admissible form to show that  invidious animus on the part of either alleged conspirator. Therefore, his conspiracy claim against Higley and Konfederath must fail for that reason alone.

Furthermore, plaintiff has also failed to show that a constitutional violation actually occurred as a result of the conspiracy. He makes only five allegations which could conceivably have been the product of the alleged conspiracy, none of which amounts to a constitutional violation. First, plaintiff alleges that Konfederath threatened him on October 15, 1998. Complaint, ¶33. However, threats are not constitutional violations. *Purcell v. Coughlin*, 790 F.2d 262 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204 (S.D.N.Y. 1996); *Malsh v. Austin*, 901 F. Supp. 757 (S.D.N.Y. 995); J*ermosen v. Coughlin*, 878 F. Supp. 444 (N.D.N.Y. 1995).

Second, plaintiff claims that Higley began making false, non-medical notations in his medical records, claiming that plaintiff was "nasty" toward her. (Compl. ¶ 35.) He does not, though, allege that a misbehavior report, or any other disciplinary action, arose as a

result of these notations. However, even a false misbehavior report would not have violated

plaintiff's constitutional rights, *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert*

*denied* 485 U.S. 982 (1988); *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997), and

Higley's alleged notations do not even rise to the level of a false misbehavior report.

Third, according to plaintiff, Konfederath tried to "provoke and stage a use of force

incident" with him, (Compl. ¶ 36) but these attempts were not successful, (*id*. ¶ 37.) Plaintiff

does not allege that a use of force actually occurred, so his allegation reduces to a claim

of harassment, which is not a constitutional violation. *Purcell,* 790 F.2d 262*; Malsh,* 901 F.

Supp. 757*.*

Fourth, plaintiff maintains that Konfederath "obtained authorization from his

supervisors" to transfer plaintiff to a company which normally housed "mentally incoherent

prisoners." (Compl. ¶ 37.) But a prisoner has no entitlement to due process when it comes

to being transferred from one facility to another. *Meachum v. Fano*, 427 U.S. 215, 225

(1976). Thus, on its face this fails to state a constitutional violation. Moreover, plaintiff is

merely speculating that Konfederath is the one who got him transferred, as shown by his

pretrial deposition testimony:

> Q:  How do you know he got you transferred? How can he do that?
> He's just an officer, he's not a sergeant.
>
> A:  Sergeants in SHU in Attica, they give officers leeway. The
> officer runs the gallery. If he feels a particular prisoner,
> legitimately – if an officer comes down and says this inmate is
> a problem on this company, you know, by him being around
> he's causing a problem, then he reports that to the sergeant,
> and that prisoner is moved if it's a legitimate security reason.
> Likewise, if it's an illegitimate reason, he wants a prisoner
> moved, he reports to the sergeant I want this guy moved over
> here and it's done.

(Longo Decl., Ex. A, at 79.) Petitioner merely states that Konfederath would have been able to effect his transfer, but he comes forward with no information supporting an inference that Konfederath did so. He claims that Konfederath threatened to murder him, and then "two or three days" later, "they grabbed me and told me go this way and I was placed in a company." (Longo Decl., Ex. A, at 79.) He does not claim that Konfederath was one of the officers who "grabbed" him, or that Konfederath threatened to transfer him. He offers no facts which place the responsibility for his transfer upon Konfederath.

Fifth, plaintiff alleges that Konfederath filed a false misbehavior report against him. (Compl.¶ 38.) The Court has already ruled that this was not a constitutional violation. *Dawes*, 2004 WL 2284885, *2. Thus, plaintiff has failed to show that any constitutional violation resulted from the alleged conspiracy.

Accordingly, the Court grants defendants motion for summary judgment and dismisses the conspiracy–Due Process claim against Higley and Konfederath.

### *Conspiracy–Due Process claim against Bennis, Higley, Johnson, Konfederath, Mackiewicz, and Wagner*

Finally, defendants argue that the conspiracy–Due Process claim against Bennis, Higley, Johnson, Konfederath, Mackiewicz, and Wagner should be dismissed. Plaintiff implies that Bennis, Johnson, Konfederath, Mackiewicz, and Wagner conspired to beat him on June 1, 1998 and then Higley joined them to cover up the beating by falsifying plaintiff's medical records and writing a false misbehavior report. As discussed above, a necessary element of a conspiracy claim is that defendants acted with discriminatory animus. Plaintiff has not offered any evidence to show, the existence of such animus.

Accordingly, the Court grants summary judgment to Bennis, Higley, Johnson, Konfederath, Mackiewicz, and Wagner on the conspiracy–Due Process claim against them.

## CONCLUSION

All of the claims against defendants in their official capacities are dismissed as are the remaining conspiracy claims. Defendants Buehler, Conway, Kelly, Roach, and Schoellkopf are terminated from this lawsuit, and the Clerk shall amend the caption accordingly. *See* FED. R. CIV. P. 10.

Plaintiff may proceed on the claim in his Second cause of action that on June 1, 1998, defendants Bennis, Johnson, Konfederath, Mackiewicz, and Wagner used excessive force on him.[3]

IT IS SO ORDERED.

Dated:   September 14, 2005
            Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[3]Defendants have not moved to dismiss the claim against Higley that she falsified plaintiff's medical record in order to cover-up the alleged excessive use of force. In their memorandum of law, they state: "Plaintiff should be permitted to proceed only on the claim that on June 1, 1998, defendants Bennis, Johnson, Konfederath, Mackiewicz, and Wagner used excessive force on him, and that defendant Higley falsified his medical records in an attempt to help cover up the other defendants' use of excessive force." (Defs.' Mem. of Law at 12.) Plaintiff's complaint does not make clear what theory of constitutional liability attaches to Higley's alleged action in this regard, however, so the Court invites further discussion of this claim at a pretrial conference, which will be scheduled by a separate Order.